T.C. Memo. 2005-239

UNITED STATES TAX COURT

ESTATE OF GRACIANO V. ESPINOZA, DECEASED,
ELVIRA ESPINOZA, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10433-04.　　　　　　　　　　Filed October 12, 2005.

<u>William E. Taggart, Jr.</u>, for petitioner.

<u>Julie E. Vanderluis</u> and <u>Catherine G. Chang</u>, for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  This matter is before us on a motion for an award under section 7430 of $1,657.50 in administrative costs, plus costs in connection with the instant motion.

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Graciano V. Espinoza (decedent) died on January 12, 2002, survived by his wife Elvira, decedent's executrix herein, and other unnamed relatives.

During 2000 and in prior years, decedent was addicted to slot machine gambling. Decedent's gambling activities occurred at casinos in Reno, Nevada.

During 2000, decedent put a total of approximately $7 million into slot machines at the Nevada casinos via either cash or casino credit card, and decedent won 526 tax-reportable jackpots paying decedent total winnings of $2,580,200 with an average jackpot of approximately $5,000. Also during 2000, decedent won other nonjackpot or "hand-paid" winnings.

During 2000, decedent purchased an automobile with $10,000 in cash (in 100 $100 bills).

In early 2001, the Nevada casinos at which decedent gambled mailed to respondent numerous Forms W-2G, Certain Gambling Winnings, for 2000, the cumulative total of which reflected decedent's $2,580,200 in slot machine jackpots.

The above Forms W-2G did not include decedent's other "non-jackpot" slot machine winnings and did not reflect decedent's gambling losses.

In May of 2001, decedent filed for bankruptcy.  Decedent listed in his bankruptcy filing total assets of $127,600 and debts in excess of $200,000.  Also, in decedent's bankruptcy filing it is indicated that during 2000 and 2001 decedent purchased a $15,000 motorcycle, a $26,000 GMC Savana, a $51,000 GMC Sierra, and a $55,000 GMC Denali.  Further, in decedent's bankruptcy filing, it is indicated that as of May of 2001 decedent owed a total of only $70,000 to the Nevada casinos at which he gambled.

Six months later, in September or October of 2001, decedent's bankruptcy case was closed.  The record does not reflect the resolution of decedent's bankruptcy proceeding.

On decedent's 2000 Federal income tax return that was filed with respondent, decedent's $2,580,200 in total jackpot winnings was reported as "Other Income", and an offsetting miscellaneous itemized deduction in the amount of $2,580,200 was claimed on Schedule A, Itemized Deductions, as "gambling losses".

On decedent's 2000 Federal income tax return, no gambling winnings were reported other than the above $2,580,200 in jackpot winnings reflected on the Forms W-2G that were mailed to respondent by the Nevada casinos.

Also reported as income on decedent's 2000 Federal income tax return were total wages of $25,300, and interest income of $182.

In October of 2001, respondent began an audit of decedent's 2000 Federal income tax return.

During respondent's audit, the accountant who had prepared decedent's 2000 Federal income tax return provided to respondent's examining agent some documents relating to decedent's gambling activities. However, no diary or log reflecting decedent's specific gambling winnings and losses was provided to respondent's agent.

In late 2001 or early 2002, respondent's audit examination was closed, and a 30-day letter was issued to decedent in which respondent proposed to allow $487,836 and to disallow $2,092,364 of decedent's total claimed $2,580,200 gambling losses for 2000.

The proposed disallowance of $2,092,364 in claimed gambling losses was based on the agent's understanding that the documents that had been provided to respondent by decedent's accountant substantiated only $487,836 in gambling losses.

Based on the claimed gambling losses to be disallowed, respondent's examining agent proposed a deficiency of $812,224 in decedent's 2000 Federal income tax.

As indicated, on January 12, 2002, decedent died.

In early 2002, decedent's accountant filed on behalf of decedent's estate a protest to respondent's proposed disallowance of gambling losses, and an Appeals Office hearing was requested on behalf of decedent.

In connection with the Appeals Office consideration of decedent's protest, and after some difficulty in scheduling a meeting with decedent's accountant, decedent's accountant met with and provided to respondent's Appeals Office a few additional documents relating to decedent's gambling winnings and losses.

Decedent's accountant, however, did not provide to respondent's Appeals Office any log or diary of decedent with regard to decedent's 2000 gambling activities.

In a March 16, 2004, notice of deficiency mailed by respondent's Appeals Office, respondent sustained the adjustment made by the examining agent to decedent's claimed gambling losses (namely, of the total $2,580,200 in gambling losses claimed, respondent allowed $487,836 and disallowed for lack of substantiation $2,092,364).

One of the estate's affidavits indicates that in connection with the protest and the appeal of respondent's gambling loss adjustment, employees in decedent's accountant's office spent 9.5 hours contacting employees of the Nevada casinos at which decedent gambled and gathering documents relating to decedent's gambling activities.

On June 21, 2004, Elvira Espinoza, executrix of decedent's estate, filed the petition herein.

As part of the pretrial preparation and exchange of documents, the estate's counsel provided additional explanation

of the documents that had been provided by decedent's accountant to respondent's examination office and Appeals Office, and respondent's trial counsel initiated telephone conversations with employees of the Nevada casinos concerning the documentation that had been provided, as a result of which respondent's trial counsel concluded that decedent in 2000 incurred with regard to his gambling activities, and was entitled to deduct in full, the total $2,580,200 in gambling losses claimed on decedent's 2000 Federal income tax return.

On or about February 28, 2005, the parties entered into a settlement under the terms of which it was agreed that the $2,092,364 in gambling losses that had been disallowed by respondent in respondent's notice of deficiency would be conceded by respondent.

Also, as part of the settlement, it was agreed that no claim would be made by the estate for the recovery of litigation costs, but the estate reserved the right to make a claim for administrative costs.

On March 28, 2005, the estate filed the instant motion for recovery of $1,657.50 in administrative costs, plus additional costs of prosecuting the instant motion.

Respondent agrees that under the settlement that was entered into the estate substantially prevailed with regard to the amount in controversy.

The disputed aspects of the instant motion for recovery of administrative costs involve whether respondent was substantially justified in his Appeals Office disallowance of $2,092,364 in claimed gambling losses and whether decedent's estate's net worth at the time of decedent's death exceeded $2 million.

## Discussion

Under section 7430, among other requirements, no award of administrative costs is available either if the respondent's position was substantially justified or if an estate's net worth exceeded $2 million at the time of the decedent's death. Sec. 7430(c)(4)(A), (B)(i), (D)(i)(I); see also 28 U.S.C. sec. 2412(d)(2)(B) (2000).

Generally, before respondent's examination office and Appeals Office, taxpayers have the burden of proving their entitlement to claimed expenses and losses. Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), affg. and revg. in part on another ground T.C. Memo. 1989-390. In connection with a motion for litigation or administrative costs, respondent has the burden of establishing that his position was substantially justified, and taxpayers have the burden of establishing that they satisfy the other requirements of section 7430. Rule 232(e).

Section 165(d) provides a deduction for losses from wagering transactions up to the amount of winnings from wagering transactions.

Rev. Proc. 77-29, 1977-2 C.B. 538, provides guidelines to taxpayers with respect to the maintenance of records relating to gambling activities and describes records that generally will be treated as sufficient to substantiate wagering gains and losses. The records generally are to be contemporaneous with the gambling activity, such as a log or diary, and are to reflect information such as:

(1) Date and type of specific wagers or wagering activity;

(2) Name and location of gambling establishment;

(3) Names of other gamblers present;

(4) Amounts won and lost.

In addition, with regard specifically to slot machine gambling, the maintenance and retention by taxpayers of wagering tickets, bank withdrawals, credit records, and information relating to specific slot machines is recommended in order to provide credible and verifiable information as to the taxpayers' gambling winnings and losses.

Although not completely clear from the record, it appears herein that respondent's ultimate pretrial concession to allow decedent's total claimed gambling losses was based essentially on the same documentation that had been provided to respondent's examination office and Appeals Office. However, it also appears that respondent's concession was based on a significantly better

understanding of that documentation, due to additional explanations with regard to the documentation provided by the estate's counsel and to additional information and explanation with regard thereto provided to respondent through contacts respondent's employees initiated with employees of the Nevada casinos.

On the record before us, we believe it would be inappropriate for us to conclude herein that the documentation that was provided by or on behalf of decedent to respondent at the examination office and Appeals Office was so obvious and understandable that respondent should have conceded the claimed gambling losses in full without issuing a notice of deficiency and without expecting the estate to provide the additional explanation and information with regard thereto that eventually was used by respondent to properly understand and determine the amount of decedent's gambling losses.

Further, we regard it as reasonable for respondent to expect decedent's representative, during the Appeals Office consideration of decedent's protest, to produce specific documentation, as contemplated by Rev. Proc. 77-29, 1977-2 C.B. 538, and to provide credible explanation thereof that adequately verifies decedent's gambling losses.

We note that many of the documents included in the attachments to the submissions on the instant motion are not

self-explanatory and that a mere reading thereof does not necessarily establish, or verify, or make clear, the amount of decedent's gambling losses for 2000. On the record before us, we conclude that respondent was reasonable and substantially justified in seeking additional information and understanding of the documents provided at the examination office and Appeals Office before conceding the gambling losses in issue, and it appears that respondent did not receive that information and explanation or understanding until shortly before trial.

With regard to decedent's net worth, the estate argues that an affidavit of decedent's surviving wife, who was also executrix of decedent's estate, decedent's bankruptcy filing, and the large amount of gambling losses decedent incurred in 2000 should satisfy respondent that as of the January 12, 2002, date of decedent's death, decedent's estate's net worth was less than $2 million, and therefore that the estate is not precluded under section 7430(c)(4)(A)(ii) and (D)(i)(I) from receiving an award of administrative costs.

Based on the $7 million that decedent in 2000 wagered on slot machines, decedent's 526 slot machine jackpots averaging $5,000 each, and decedent's purchase in 2000 of an automobile with $10,000 in cash, respondent asserts that the estate should be required to produce financial records that establish with greater specificity and credibility the amount of decedent's estate's net worth on the date of death.

We agree with respondent.  In light of decedent's extensive gambling activities, decedent's large gambling losses, and decedent's $10,000 cash payment on the purchase of an automobile (noteworthy since $10,000 represented approximately one-half of decedent's total reported wages for 2000), reasonable questions have been raised by respondent as to decedent's sources of cash and as to decedent's estate's net worth on the date of death.

For example, where did decedent in 2000 obtain $7 million to play the slot machines?  What was the source of the $7 million in cash or credit, and did decedent have some undisclosed source of funds, or net worth, to make the wagers and to pay the casinos whatever credit the casinos extended to him?

We do not regard the affidavits submitted (and the conclusory statements therein by decedent's wife and by decedent's accountant that decedent's net worth at no time exceeded $2 million) to be adequate.  On the facts of this case and contrary to the estate's contention, we regard respondent's request for better verification of decedent's estate's net worth as neither "disingenuous" nor "outrageous".

At one point in the estate's reply memorandum, to deflect a negative inference from decedent's use of $10,000 in cash on the purchase of an automobile, the estate states:  "[after all] Approximately seven million dollars passed through * * * [decedent's] hands in 2000."  That is exactly respondent's point.

If decedent was not worth much, what was decedent's source for the $7 million used in 2000 for his gambling activities? As noted, decedent apparently owed the Nevada casinos only $70,000, suggesting that decedent had access to millions of dollars to either play the slot machines with cash or to pay off the casinos to the extent the casinos allowed decedent to play the slot machines on credit (over the $70,000 decedent owed the casinos).

In our opinion, neither the fact that decedent incurred large gambling losses nor the fact that decedent filed for bankruptcy establishes for decedent's estate a negative net worth on the date of death.

In 2000, decedent realized large gambling winnings and large gambling losses, but he reported nominal wage income and had significant cash on hand to use for the purchase of an automobile. These facts suggest to us substantial assets, and we believe respondent to have been reasonable in the request for more specific information about decedent's net worth, which information has not been provided.

We commend trial counsel for negotiating a favorable settlement with regard to decedent's claimed gambling losses. That favorable settlement or concession by respondent, however, does not necessarily translate into an award of administrative costs against respondent, even the relatively modest amount sought herein. See Sokol v. Commissioner, 92 T.C. 760, 767 (1989).

For the reasons stated, we shall deny the motion for an award of administrative costs.

<u>An appropriate order will be entered</u>.